FILED

August 31, 2015

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 12:48 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| **Chad Drovdahl,** | ) | **Docket No.: 2015-02-0143** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 3062-2015** |
| | ) | |
| **City of Bristol, Tennessee,** | ) | **Date of Injury: January 13, 2015** |
| **Employer,** | ) | |
| **and** | ) | **Judge: Brian K. Addington** |
| | ) | |
| **TML Risk Management Pool,** | ) | |
| **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on August 25, 2015, upon the Request for Expedited Hearing filed by Chad Drovdahl (Mr. Drovdahl), the Employee, on August 5, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014), to determine if the City of Bristol, Tennessee (Bristol), is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Drovdahl is entitled to the requested medical benefits.

## ANALYSIS

### Issues

1. *Whether Mr. Drovdahl sustained an injury that arose primarily out of and in the course and scope of employment with Bristol.*
2. *Whether Mr. Drovdahl suffered from a pre-existing condition that was aggravated by a work-related injury.*
3. *Whether Mr. Drovdahl sustained an injury in the course and scope of his employment with Bristol.*

1

4. *Whether Bristol is obligated to provide a panel of physicians upon notice of Mr. Drovdahl of an alleged injury.*
5. *Whether the panel of physicians provided by Bristol was in compliance with the law.*
6. *Whether Mr. Drovdahl is entitled to another panel of physicians in compliance with the law.*
7. *Whether Mr. Drovdahl is entitled to additional medical care as recommended by a physician.*
8. *Whether Mr. Drovdahl is entitled to an evaluation by another physician.*
9. *Whether Mr. Drovdahl is entitled to any past or future temporary total disability benefits, and if so, in what amount.*

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Collective Exhibit of State forms;
2. Pre-Injury Medical Records: Dr. Thomas Whitman (Dr. Whitman);
3. Medical Records: Dr. Galen Smith;
4. C-23 Notice of Denial dated May 27, 2015;
5. Post-Injury Medical Records: Dr. Sanjeev Kakkar and Dr. Whitman; and
6. March 25, 2015 letter by Dr. Whitman.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), May 26, 2015
- Dispute Certification Notice (DCN), July 24, 2015
- Mr. Drovdahl's Request for Expedited Hearing (REH), August 5, 2015.

Mr. Drovdahl testified in-person at the hearing.

## History of Claim

Mr. Drovdahl worked for Bristol as a maintenance worker. On January 13, 2015, Mr. Drovdahl repaired a broken water pipe, which required him to work in knee-deep mud. When he completed his work, Mr. Drovdahl attempted to free his right leg from the surrounding mud and felt a pop and a tear in his right knee. (Ex. 1 at 1.) Mr. Drovdahl reported the incident to his supervisor and went home due to pain. Bristol called Mr. Drovdahl to return to work in order to arrange medical treatment for his condition.

Mr. Drovdahl testified that he initially received authorized treatment at Wellmont Occupational Health Services (Wellmont). The parties did not present evidence of a signed panel of physicians for the Wellmont visit. Dr. Sanjeev Kakkar at Wellmont

2

examined Mr. Drovdahl on January 13, 2015, and diagnosed an acute right-knee strain. Dr. Kakkar provided a toradol injection and assigned work restrictions. (Ex. 5 at 1-2.)

On January 20, 2015, Dr. Kakkar noted that Mr. Drovdahl continued to suffer sharp pain and range of motion deficits in his right knee. Dr. Kakkar requested an MRI to "delineate his pathology." *Id.* at 3. According to the radiologist, Dr. Mitchell Medndrek, the MRI results indicated a sprain of the ACL and a bucket-handle tear of the medial meniscus. *Id.* at 4. After discussing the MRI results with Mr. Drovdahl, Dr. Kakkar referred him to an orthopedic physician. *Id.* at 5.

Bristol offered Mr. Drovdahl a panel of two orthopedists and a physiatrist. Mr. Drovdahl chose an orthopedist, Dr. Thomas Whitman. (Ex. 1 at 3.) Dr. Whitman previously treated Mr. Drovdahl for non-work-related osteoarthritis of the right knee. (Ex. 2 at 1.) Dr. Whitman last saw Mr. Drovdahl on August 27, 2014. At that appointment, Dr. Whitman noted that Mr. Drovdahl's condition improved, but he also discussed treatment options of therapeutic injections or a total right-knee arthroplasty. *Id.* at 2.

Mr. Drovdahl saw Dr. Whitman for the first time post-accident on February 11, 2015. Upon examination, Dr. Whitman observed "[t]ri-compartmental degenerative changes, medial meniscal subluxation, worse than films in 7/2014." *Id.* at 7-9. He diagnosed Mr. Drovdahl with a "right knee injury with significant exacerbation of prior OA [osteoarthiritis]." *Id.* at 9. Dr. Whitman injected Mr. Drovdahl's knee and recommended physical therapy. *Id.* at 9-10. Dr. Whitman provided two additional injections on March 16, and March 23, 2015. *Id.* at 20.

On March 25, 2015, Dr. Whitman prepared a letter to Bristol's workers' compensation adjuster regarding a causation questionnaire he received from her. (Ex. 6.) Dr. Whitman noted that Mr. Drovdahl suffered significant worsening of his pathology from July 2014, to February 2015. *Id.* He opined that it was reasonable to consider that Mr. Drovdahl's January 2015 injury significantly worsened the difficulty with his right knee. *Id.* Dr. Whitman further stated, "It would be reasonable to obtain a second opinion from someone who has not been involved in his care longitudinally in an effort to have another estimation of the contribution of his injury in January of 2015 to his current symptoms." *Id.*

Dr. Whitman continued to treat Mr. Drovdahl through April 13, 2015, at which time he recommended a total-knee arthroplasty. (Ex. 5 at 31-35.)

Bristol sent Mr. Drovdahl to another orthopedic surgeon, Dr. Galen Smith, who examined Mr. Drovdahl on May 18, 2015.[1] (Ex. 3.) Dr. Smith wrote the following:

---

[1] Exhibit 3 is labeled as an Independent Medical Examination. The Court shall refer to Exhibit 3 as an examination

3

DISP: I have been asked by Ms. Dawn Feinstein, the claim adjuster, for the pool company to render an opinion about this case.

1. I do not feel the injury occurring on 1-13-15 caused the osteoarthritis of the right knee.

2. I do believe the injury of 1-13-15 is an exacerbation of a pre-existing arthritic condition of the knee.

3. Apparently Dr. Whitman felt that the medial meniscus injury was a more minor component of the overall osteoarthritis presentation as Dr. Whitman did not recommend any arthroscopic medial meniscectomy.

4. Dr. Whitman had seen the patient in the summer of 2014 between June 11, 2014 and August 27, 2014. During those office visits the patient had treatment with medication, steroid injection and visco supplement injection as well. And, most importantly, on 8-27-14 Dr. Whitman told the patient that future treatment with total knee replacement was reviewed with the patient. Therefore I think that the need for total knee replacement is mainly a result of pre-existing arthritis and not his work comp injury of 1-13-15.

Further substantiation of this opinion is that on his MRI scan of 1-13-15 it showed severe cartilage loss of the medial joint space. Cartilage loss, which is osteoarthritis related, does not happen in a few days or a few weeks. It takes months or even more likely years to develop. Therefore I think the cartilage loss of the medial joint compartment of the right knee seen on the MRI scan of 1-30-15, just 2 weeks post-injury, would be entirely from pre-existing condition and not due to his work comp injury of 1-13-15.

I have been asked if I could state with greater than 50% medical certainty that the need for total knee replacement is due to pre-existing medical condition with osteoarthritis. I do believe that is the case.

DD:    05-18-15
DT:    05-20-15

GALEN R. SMITH, M.D./ac
cc:    Ms. Dawn Feinstein
       Patty Lockhart, Case Manager

(Ex. 3 at 3.)

Bristol declined further treatment once it obtained Dr. Smith's opinion. It filed a C-23 Notice of Denial of Claim for Compensation on May 27, 2015, asserting that "[o]ngoing treatment is not 50% or greater related to the incident." (Ex. 4.) Mr. Drovdahl disagreed with Dr. Smith's opinion and requested further treatment as recommended by Dr. Whitman.

Mr. Drovdahl filed a PBD on May 26, 2015, seeking medical and temporary

by the employer's physician. See Tenn. Code. Ann § 50-6-204(d)(1).

disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed the DCN on July 24, 2015. Mr. Drovdahl filed an REH on August 5, 2015.

## Mr. Drovdahl's Contentions

Mr. Drovdahl asserts that he injured his right leg in the course and scope of his employment. He acknowledges that he saw Dr. Whitman for his right-knee condition before the work accident occurred. Mr. Drovdahl further acknowledged that his right knee caused some discomfort before the work accident. However, he contends that the work accident caused a different more severe pain in his right knee than he previously experienced. He requests medical treatment as recommended by Dr. Whitman. He disagrees with Dr. Smith's opinion, because his knee did not hurt as badly before the incident on January 13, 2015. He requests temporary disability benefits for a single day, May 18, 2015, the day he went to the examination by Bristol's physician, Dr. Smith.

## Bristol's Contentions

Bristol contends that Dr. Smith's opinion is controlling, and that Mr. Drovdahl failed to present sufficient evidence to prove that he suffered a compensable work injury on January 13, 2015. Bristol argues that Mr. Drovdahl has not shown that his need for right-knee treatment was primarily caused by the alleged work accident. Bristol points out that it paid for Mr. Drovdahl's medical treatment with Dr. Kakkar and Dr. Whitman, in addition to temporary disability benefits, until Dr. Smith rendered his opinion. Bristol denies it owes Mr. Drovdahl any further worker's compensation benefits.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

5

*Factual Findings*

Mr. Drovdahl's right knee popped when he pulled his leg from mud at work on January 13, 2015. When Mr. Drovdahl reported the injury, Bristol did not provide Mr. Drovdahl a panel of physicians, but sent him to Wellmont for evaluation. The Wellmont physician, Dr. Kakkar, referred Mr. Drovdahl for an evaluation with an orthopedic physician. Bristol provided a panel of physicians that included two orthopedics and a physiatrist. Mr. Drovdahl chose Dr. Whitman from the panel, because he previously treated him. Dr. Whitman recommended a total-knee arthroplasty, but elected not to render an opinion on causation. Bristol sent Mr. Drovdahl for an examination by a physician of its choosing, Dr. Smith. Dr. Smith opined that: 1) Mr. Drovdahl's osteoarthritis pre-existed the January 13, 2015 incident; and, 2) Mr. Drovdahl's need for surgery is "mainly" due to his pre-existing osteoarthritis.

*Application of Law to Facts*

The Workers' Compensation Law defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(13)(A) (2014). In addition:

> An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence and shall not include the aggravation of a preexisting disease, condition or ailment, unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment[.]

Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

When an employee suffers an injury and requests a need for medical care, an employer must provide the employee a panel of physicians. *See* Tenn. Code. Ann. § 50-6-204(a)(3)(A)(i) (2014). In the present case, Bristol did not originally provide a panel of physicians to Mr. Drovdahl, but sent him for an evaluation at Wellmont. Later, Dr. Kakkar referred Mr. Drovdahl to an orthopedist. At that time, Bristol provided a panel.

When Dr. Kakkar made the referral to an orthopedist, he did not make a specific referral. Under such circumstances, Bristol's proper response should have been to provide Mr. Drovdahl with a panel of three orthopedists. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii) (2014). Instead, Bristol provided Mr. Drovdahl a panel comprised of

two orthopedists and one physiatrist. Mr. Drovdahl chose one of the orthopedists, Dr. Whitman. Dr. Whitman recommended surgery, but he refused to opine as to whether Mr. Drovdahl's injury primarily arose out of and in the course and scope of his employment, or whether his condition was pre-existing.

The Workers' Compensation Law presumes that the panel-selected physician will render an opinion on causation. *See* Tenn. Code Ann. § 50-6-102(13)(E) (2014). Bristol sent Mr. Drovdahl for an examination by its physician, Dr. Smith, to obtain a causation opinion. Dr. Smith opined Mr. Drovdahl suffered an exacerbation of his pre-existing condition, but added that Mr. Drovdahl's need for treatment was pre-existing and not work-related. Bristol terminated benefits once Dr. Smith rendered his opinion, even though Mr. Drovdahl requested additional treatment.

At issue is whether Bristol provided an appropriate panel in compliance with the law. The Court finds it did not. Instead of three orthopedists, Bristol provided only two, and the one Mr. Drovdahl chose refused to render a causation opinion. Neither circumstance is acceptable. Consequently, Bristol shall provide Mr. Drovdahl a panel of physicians comprised of three orthopedists.

The Court reserves the remaining issues. Although Dr. Smith rendered an opinion on causation, at this time, the Court withholds an assessment of the appropriate weight to give to Dr. Smith's determination, pending Mr. Drovdahl's evaluation by the new, panel-selected orthopedist.

The Court finds that Mr. Drovdahl is likely to prevail at a hearing on the merits of the issue concerning Bristol's provision of an appropriate panel.

**IT IS, THEREFORE, ORDERED as follows:**

1. Bristol shall provide Mr. Drovdahl a panel of physicians specializing in orthopedics from which Mr. Drovdahl may select an authorized treating physician for evaluation and treatment of work-related conditions in accordance with Tennessee Code Annotated section 50-6-204 (2014). Mr. Drovdahl or the medical providers shall furnish medical bills to Bristol or its workers' compensation carrier.

2. This matter is set for a Scheduling Hearing on October 12, 2015, at 10:00 a.m. Eastern Time.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured**

7

**Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

ENTERED this the 31st day of August, 2015.

**Judge Brian K. Addington**
**Court of Workers' Compensation**

Initial (Scheduling) Hearing:

An Initial Hearing has been set with **Judge Addington, Court of Workers' Compensation Claims. You must call 865-594-6538 or toll free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

8

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 28th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Chad Drovdahl | X | | | 482 Hayes Road, Ext. Bluff City, TN 37618 |
| Sam McPeek, Esq. | | | X | sam@hbm-lawfirm.com |

9

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov